## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **TRUSTEES OF LABORERS,** | : | **Case No. 1:04CV2294** |
| **LOCAL 310 PENSION FUND,** *et al.* | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | <u>**OPINION AND ORDER**</u> |
| **ABLE CONTRACTING GROUP, INC.** | : | |
| | : | |
| **Defendant.** | : | |

This matter arises on Plaintiffs' *Motion for Sanctions (With Request for Attorney Fees and Costs)* (Doc. 50).  In that motion, Plaintiffs ask the Court [pursuant Federal Rules of Civil Procedure 37 and 45] to award attorneys' fees and to have certain contested facts established for purposes of the action because Defendant, Able Contracting Group, Inc.'s ("Able") and non-party, Anchor Construction Fencing, LLC's ("Anchor"), conduct during discovery has been unreasonable and unjustified.  Able filed a *Memorandum in Opposition to Plaintiffs' Motion for Sanctions (With Defendant's Request for Attorney Fees and Costs)* (Doc. 52) on April 21, 2006.  Plaintiffs filed their *Reply Memorandum in Support of Plaintiffs' Motion for Sanctions (With Request for Attorney Fees and Costs)* (Doc. 54) under seal on May 2, 2006.  Anchor has not addressed Plaintiffs' motion.

For the reasons articulated below, Plaintiffs' *Motion for Sanctions (With Request for Attorney Fees and Costs)* (Doc. 50) is <u>**GRANTED**</u> in part and <u>**DENIED**</u> in part.

## I.    BACKGROUND

On November 18, 2004 Plaintiffs, trustees of various laborers' union benefit funds, filed a complaint against Able alleging, *inter alia*, claims for delinquent contributions to the funds.  Despite

the fairly routine issues presented by Plaintiffs' claims, the discovery history of this case is marked by needless complexity – driven from the start by Defendant's (and non-party's) counsel's single-minded determination to delay and frustrate discovery in this matter by challenging every subpoena, document request, or notice of deposition propounded by Plaintiffs.  Indeed, despite this Court's orders, communications, and clarifications of the bounds of discovery, Able and Anchor have refused to cooperate or obey, eventually providing only evasive, incomplete, and untimely discovery.  The final affronts (giving rise to Plaintiffs' motion for sanctions) came via a series of baseless challenges to the clear instructions given by this Court during an on-record conference – specifically held to address the constant discovery problems– on January 31, 2006.[1]

It is apparent to the Court that, since the filing of Plaintiffs' motion for sanctions, the case has ground to a standstill.  It appears that Able and Anchor's Stalingrad defense has, thus far, successfully delayed the resolution of the issues.  Able and Anchor, however, will not be rewarded for their tactics.

## II.    DISCUSSION.

### A.    Able's Conduct Has Been Vexatious, Dilatory, and Violative of the Court's Orders, Resulting in Untimely and Incomplete Discovery.

In October 2005, after mediation failed, Plaintiffs served Able with a set of document requests.[2]

---

[1] The Court is always willing to provide guidance to parties and resolve legitimate discovery disputes.  Throughout the discovery process in this case, however, the Court has expended an inordinate amount of time resolving a variety of unnecessary disputes requiring individualized rulings only then to have Able come back to argue whether the Court's individualized determinations are sufficiently specific.  As discussed below, Able's challenges to the Court's January 31, 2006 ruling, upon which the Motion for Sanctions is largely based, went beyond their unacceptable, established pattern of obstruction and quibbling.

[2] While the Magistrate Judge who attempted the mediation kept the parties' confidences with respect to their respective settlement postures, the Magistrate Judge did inform the Court that Able's counsel's attitude toward settlement and disrespect for both Plaintiffs' counsel and the mediation process itself made mediation efforts useless.

Able objected to every request and completely refused to provide the requested information for many of the requests. The Court heard Able's objections during an October 21, 2005 status conference. During that conference, the Court required Plaintiff to specify the information requested in a letter and ordered Able to provide that information to Plaintiff. On October 25, 2005, Plaintiffs sent a clear letter requesting seven categories of documents specifically contemplated by the Court's October 21, 2005 Order. By December 2, 2005, Able, in violation of the Court's Order, still had not produced the requested documents. According to Plaintiff, Able claimed it did not keep its workers' compensation filings, thus, Plaintiff was forced to subpoena those records from the Ohio Bureau of Workers Compensation (Doc. 34). Plaintiff also states that, as late as January 19, 2006 and despite the Court's Order, Able was unable to provide its employees W-2s and other business and tax records. (See Doc. 37). Eventually, Plaintiff was compelled to subpoena those records from Able's accounting firm, Walthall, Drake & Wallace, LLP ("Walthall").

Plaintiffs' subpoena of records from Walthall prompted Able to manufacture new discovery challenges. Indeed, not only did Able fail to cooperate by making an effort to obtain *their* missing documents from *their* accountants, Able actually moved to quash Plaintiffs' subpoena (on January 18, 2006)[3] to Walthall seeking those documents – documents which the Court had already instructed *Able* to produce. On January 31, 2006, at another hearing to address discovery problems, the Court denied Able's motion to quash and ordered Walthall to respond to the subpoena.

Walthall and Able, however, stonewalled Plaintiff again by claiming that the documents

_____

[3] Walthall did not move to quash the subpoena.

requested by the subpoena were either already produced (which proved incorrect),[4] or were not covered by the Court's Order (which was also incorrect).  Thus, rather than obey the Order, or cooperate during discovery and object to a document's use in evidence, Able chose the more obstructive (and perilous) course – to withhold discovery beyond the deadline and hope that the Court would agree with Able's arguments.  On March 13, 2006, nearly a month after the deadline to produce the documents had passed, the Court was once again called upon to resolve the issue.  The parties outlined Able's discovery objections – primarily whether Walthall had to produce documents that Able contends it, or other witnesses had already produced.  The Court rejected Able's arguments and communicated to the parties through its law clerk that the matter was completely resolved during the January 31, 2006 conference – Walthall must produce the requested documents as previously ordered.

Later in March, Able re-raised yet another discovery objection resolved by the January 31, 2006, conference.  At that conference, Plaintiffs argued that Anchor, a non-party, should be required to produce documents and respond to subpoenas because Anchor is merely an alter ego for Able.[5]

---

[4] Eventually, well after the deadline, some documents were apparently produced.  As Plaintiffs note, by way of an example of Defendant's conduct during discovery and to refute the assertion that the documents were already produced, the tax returns they eventually received from Walthall were complete, whereas those same documents produced by Able were missing numerous pages (this came after Mr. Sabo, counsel for Able, argued against any production by the accounting firm and told the Court during the January 31, 2006 conference that Able had produced the tax returns).  Compare *Reply Memorandum in Support of Plaintiffs' Motion for Sanctions* (Doc. 54), Ex. L, with *Reply Memorandum in Support of Plaintiffs' Motion for Sanctions* (Doc. 54), Ex. M; see also Jan. 31, 2006 Hr'g. Tr. 20:5-21:6; 22:18-19.  The complete documents, therefore, likely never could (or would) have been produced by Able.

[5] At a December 2005 deposition of a witness who is an officer for Able, Plaintiff discovered that the witness was also an owner of Anchor.  According to the witness' testimony Anchor, like Able, also does fencing work; the companies are owned by the same families, and share, among other things, employees, a building, and telephone numbers.  Consequently, Plaintiff began to question the witness in pursuit of the theory that Able and Anchor were alter egos.  Counsel for Able terminated the deposition, over the objection of Plaintiffs' counsel, until

Plaintiffs alleged that Able simply has been shifting employees to Anchor to avoid paying certain contributions under the agreements Plaintiffs have with Able. The Court, on the record, ordered Able and Anchor to provide the requested discovery. Jan. 31, 2006 Hr'g. Tr. 18:9-11 ("So what I am going to do at this point is to allow the discovery *as to both Anchor and Able*.") (emphasis added). Counsel for Anchor asked the Court whether "the Court is allowing the discovery with regard to any particular period." Id. 18:23-24. The Court's response was unambiguous "[t]he time period that I am going to allow discovery is the time period from the inception of Anchor up *through May 1, 2005*" reasoning that, "the subsequent activities during the period of the collective bargaining agreement would still be relevant to the practices that were employed by the *two companies* and the way they treated these respective employees. So I am going to allow discovery up through May 1st of 2005." Id. 18:25-19:2, 19:8-13 (emphasis added).

Despite these clear instructions, counsel for Able refused to produce the required discovery. On March 14, 2006, Roger Sabo, counsel for Able, submitted a letter endeavoring to justify yet another untenable position seeking to constrain discovery. In that letter, Mr. Sabo admitted that he had not yet responded to Plaintiffs' discovery requests – though it was well beyond the deadline. Mr. Sabo took another risky position, stating that he delayed his response beyond the deadline in the Order because he wished to review the transcript from the January 31, 2006 hearing. He went on to state: "[m]y review of the transcript confirms that at no time during that hearing did the Court consider the question

---

counsel for Anchor (a relative of the owners and operators of both companies) could be present. On December 16, 2005, in further pursuit of the alter-ego theory, Plaintiff caused a subpoena to be served on Anchor seeking documents identifying, *inter alia*, Anchor's employees, officers, vendors, and collective bargaining agreements. Anchor objected to the subpoena and refused to produce the documents. A little over one month later, Anchor and Able moved to quash the subpoenas to Anchor and Walthall.

of additional production of documents by *Able* through May 1, 2005." Letter from Roger L. Sabo to Chambers (Mar. 14, 2006). How Mr. Sabo's review of the transcript confirmed this position is puzzling. The exchange was clear: (1) the Court said it was going to allow discovery as to Able *and* Anchor; (2) counsel for Anchor asked what period the discovery would cover; (3) the Court said discovery would be through May 1, 2005; and (4) the Court gave its reasons for permitting the discovery as to both companies. Indeed, Mr. Sabo's letter reiterates the precise arguments addressing the extended discovery period that the Court specifically considered and rejected during the January 31, 2006 hearing.[6] Once again, via email on March 16, 2006, the Court instructed Able to produce the discovery. Apparently, nearly three weeks later, Able produced some of the requested documents.

**B.      Sanctions Are Appropriate Against Mr. Sabo Under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37.**

A federal court has several tools available for imposing sanctions where warranted. Under the circumstances here, the Court is within its discretion to award sanctions under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37.

**1.      Able's Counsel's Conduct Has Been Unreasonable and Vexatious.**

With respect to unnecessarily vexatious action by counsel, federal law provides:

> Any attorney or other person admitted to conduct cases in any court of

---

[6] In his letter to the Court (nearly three months after the January 31, 2006 hearing), Mr. Sabo objected to the discovery period ending May 1, 2005, arguing that: "Plaintiffs have the right to do a new audit, and perhaps to file a new lawsuit . . . but to change the scope of the dispute at this point . . . would unfairly prejudice Able." Letter from Roger L. Sabo to Chambers (Mar. 14, 2006). The Court, however, rejected this argument during the hearing, stating: "[a]s I said, clearly, the Plaintiffs would have a right to file an independent claim with respect to the period after March of [] 2004. . . . *Even if they didn't file an independent case, the subsequent activities . . . would still be relevant to the practices that were employed by the two companies . . . ."* and ordering *"I am going to allow discovery up through May 1st of 2005."* Hr'g Tr. 19:2-10; 19:12-13 (emphasis added).

6

> the United States or any Territory thereof *who so multiplies the*
> *proceedings in any case unreasonably and vexatiously* may be required
> by the court to satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).  The Sixth Circuit has held that § 1927 "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." Jones v. Continental Corp., 789 F.2d 1225, 1230 (6th Cir. 1986).  The Sixth Circuit explained that a finding of "bad faith" on the part of the party in question was not required for liability under § 1927.  Rather, an attorney can be found to have unreasonably and vexatiously multiplied the litigation, and an assessment of fees against that attorney is proper, where:

> [A]n attorney knows or reasonably should know that a claim pursued is
> frivolous, or that his or her litigation tactics will needlessly obstruct the
> litigation of nonfrivolous claims.

Id. at 1230.

The Sixth Circuit subsequently held that § 1927 sanctions are appropriate where:

> [A]n attorney has engaged in some sort of conduct that, from an
> objective standpoint, 'falls short of the obligations owed by the member
> of the bar to the court and which, as a result, causes additional expense
> to the opposing party.'

Shepard v. Wellman, 313 F.3d 963, 969 (6th Cir. 2003).  The standard for imposing sanctions under § 1927, however, continues to be the objective standard announced in Jones.  See Ridder, *supra*, 109 F.3d at 298.

Mr. Sabo's conduct during March 2006 fell far short of the obligations he owed to the Court.[7]

During the January 31, 2006 conference, attended by Sabo, Able was ordered – in no uncertain terms

---

[7] Though the Court focuses on Able's counsel's conduct during March 2006, his behavior, as discussed above, has been obstructive and dilatory since he became involved in the matter.

– to provide the discovery requested by Plaintiffs through May 1, 2005. Able simply refused (sanctionable conduct in its own right). To justify his refusal, Sabo claimed that he needed time to review the transcript of the hearing. After review of the transcript, as discussed above, Sabo maintained the frivolous position that Able was not required to provide the discovery.

The Court has examined the totality circumstances to determine whether Mr. Sabo's actions were sanctionable. At the outset, during the January 31, 2006 conference, the Court clearly, and in the presence of Mr. Sabo himself as well as the designated counsel for Anchor, ordered the production of documents from Able and Anchor through May 1, 2005. In fact, that time period was articulated in response to a question from counsel for Anchor, who is apparently the same person who retained Mr. Sabo to act as counsel for Able, and has coordinated with Able with respect to the discovery responses of *both* companies. Later in the hearing, the Court reiterated its decision to permit the discovery. All of this is on the record, which Able admitted it had reviewed prior to March 14, 2006.

Additionally, during the January 2006 conference, the Court preemptively addressed the relevance of the expanded discovery period later questioned by Able. The Court could not have been more clear. Thus, Able's contention, via its March 14, 2006 letter, that the documents should not be produced because they would go beyond the scope of the existing litigation did not provide a good faith basis or legitimate reason for noncompliance.

The Court also observes that the time for Able to comply with the Court's Order expired on February 21, 2006. Able let that deadline pass without stating its objection. Plaintiffs' counsel then (on February 27, 2006) sent a letter to Able's counsel addressing the failure to comply before the passage of the deadline. Able's counsel then waited two more weeks to respond to Plaintiffs' letter and only then claimed that he wanted to review the transcript. Finally, rather than review the transcript,

8

apologize, and admit that he was mistaken, Able's counsel continued to refuse discovery, adhering to his frivolous assertion that the Court did not consider the discovery at issue.  Eventually, as discussed above, in March 2006 the Court again was compelled to address the dispute.  Again the Court, via its law clerk, conveyed to Able that the discovery must be provided and that the matter was resolved by the Court's oral ruling at the January 31, 2006 hearing.  In sum, the Court concludes, from an objective standpoint, that Mr. Sabo's actions: (1) were unreasonable and vexatious; (2) unnecessarily multiplied the discovery proceedings;(3) were in direct defiance of the Court's prior orders; and (4) eventually led to the motion for sanctions.  Accordingly, Mr. Sabo is subject to sanctions.

### 2.    Able Has Violated This Court's Discovery Orders.

Plaintiffs have asked the Court to award the attorneys' fees occasioned by Able and Anchor's failure to comply with the discovery orders.  Plaintiffs have also requested that the Court order two facts taken as established for purposes of the action: (1) that the collective bargaining agreement at issue is applicable to the hours listed in Plaintiffs' expert report; and (2) that Anchor and Able are alter egos.

Federal Rule of Civil Procedure 37(b)(2) provides that, "[i]f a party . . . fails to obey an order to provide or permit discovery" a court may "make such orders in regard to the failure as are just."  Fed. R. Civ.. P. 37(b)(2).  Unlike sanctions under 28 U.S.C. § 1927 "a party fails to obey a discovery order merely by failing to comply; *no showing of willfulness, bad faith, or malice is needed*."  Tech. Recycling Corp. v. City of Taylor, 186 Fed. Appx. 624, 631-32 (6th Cir. 2006) (citing Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 208 (1958) (emphasis added)).  Willfulness or bad faith pertains only to the nature of the sanction.  Id.

The Sixth Circuit has enumerated four factors for district courts to consider when imposing

9

sanctions for failure to obey discovery orders:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997).  When considering Plaintiffs' request for attorneys' fees, the analysis is straightforward.  The Court has already concluded that Able violated the Court's January 31, 2006 discovery Order.  See *infra* Section II(A).  The lengthy delays and serious complications caused by Able's failure to comply were not, as Able suggests, justified by the complexity of the case.  As noted above, the case involves a fairly standard issue of contribution. Able's choice to refuse discovery for a month after the deadline before asking for clarification also militates against excusing their conduct.  The Court, therefore concludes that Able's violation of the discovery Order warrants sanctions.  Once a court has determined that an award of sanctions is appropriate under Rule 37, it must address the measure of those sanctions.  See Phillips v. Cohen, 400 F.3d 388, 402 (6th Cir. 2005) (holding that it was an abuse of discretion to find that a party was entitled to sanctions, yet fail to impose any sanctions).  Attorneys' fees and expenses are among the least severe of sanctions.  The Court, moreover, has already determined that Plaintiff is also entitled to such fees under 28 U.S.C. § 1927.  To conclude that an award of attorneys' fees is appropriate, in the alternative, under Rule 37(b)(2) therefore certainly does not visit an injustice upon Able.

The more difficult inquiry rests with Plaintiffs' request that the Court find established, for purposes of this case, that: (1) the collective bargaining agreement at issue is applicable to the hours listed in Plaintiffs' expert report; and (2) that Anchor and Able are alter egos.  These are important issues in Plaintiffs' claims for contribution.  Able argues that to hold these facts established would be

10

tantamount to entering a default judgment, at least as to liability.  The Court, in part, agrees with Able.  The analysis, therefore, requires careful scrutiny of the four factors listed above.

The Court has already concluded that Able's failure to comply with the discovery Order was unjustified.  As noted above, Able's refusal to provide the requested discovery and staunch adherence to the unreasonable position (see *infra* section II(B)(1)), via its March 14, 2006 letter, did not provide a good faith basis or legitimate reason for noncompliance.  The original deadline for the discovery was twenty (20) days from the conference.  Able did not comply or even object prior to the deadline.[8]  It

---

[8] In its opposition brief, Able's argument centers on the misconception that it has not violated any of the Court's previous orders because it was not ordered to produce documents through May 1, 2005 until March 16, 2006.  As discussed above, Able was ordered to provide the discovery during the January 31, 2006 conference.  Able's subsequent, carefully crafted, misinterpretations of the Court's oral orders do not excuse its non-performance.  See Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1543 n.7 (11th Cir. 1993) ("[an] oral discovery order is a valid basis for Rule 37 sanctions.  Oral orders are just as binding on litigants as written orders; the consequences for violating an oral order are the same as those for violating a written order.").  To allow this practice would permit parties to make unreasonable interpretations of the Court's orders simply to create a "new" dispute and avoid sanctions.  This would invite obstinate litigants to pursue an endless sequence of discovery challenges requiring the courts to chaperone them through every aspect of the discovery process.

In any event, Able maintains this argument in its Opposition after being present during the hearing, after discussions with Plaintiffs' counsel, after reviewing the hearing transcript, and after being told *again* by the Court in the March 16, 2006 correspondence that the January 31, 2006 hearing resolved the issue.  By continually choosing to pursue the most limited (and misguided) interpretation of the Court's instructions, Able ran the risk of sanctions.  The Court's correspondence to the parties on March 16, 2006, moreover, indicated that the matter was resolved by the January 31, 2006 conference.  Yet, Able still – in its opposition brief written after March 16, 2006 – refused to accept that the Court ordered the production through May 1, 2005.  This provides another demonstration of the great lengths to which Able and its counsel will go to avoid its obligations to opposing counsel and the Court.

appears to the Court, therefore, that Able's conduct exhibited willfulness, bad faith, and fault.[9]

The Court finds, moreover, that the Plaintiffs have been delayed in the prosecution of this matter and been forced to incur substantial additional and *needless* expense because of Able's unreasonable discovery positions. Clearly, this constitutes prejudice to Plaintiffs for which a *variety* of sanctions would be warranted.

Having found that Able acted willfully and in bad faith, severely delayed the resolution of this matter, and forced Plaintiffs to incur substantial costs, the Court must also consider: (1) whether the Able was warned that failure to cooperate could lead to the sanction; and (2) whether less drastic sanctions were first imposed or considered. The discussion at the January 2006 discovery conference was in direct response to Plaintiffs' allegation that Able had *already* violated its discovery obligations. The Court made it clear that it was unpersuaded by, and unhappy with, the discovery posture Able had taken in this matter up to that point. While it declined to impose sanctions at that hearing, it left no doubt that it expected Able to produce the discovery covered by its orders. The Court again warned Able to comply with its clear discovery Order on March 16, 2006. Despite these unequivocal orders of the Court, Able waited over six weeks past the Court-imposed production deadline and three weeks after the Court's second order before producing the required documents (and Plaintiffs have asserted that even that production was incomplete). The Court, therefore, finds that Able did not heed its warnings, choosing instead to add yet additional delays, on top of all the previous, unacceptable delays.

While the Court has not, prior to this Order, imposed less drastic sanctions, that is only because

---

[9] Able has also suggested that sanctions are inappropriate due to Plaintiffs' unclean hands. The Court, however, declines to apply the defense of unclean hands to violations of its discovery orders. To permit such a defense would leave final control of the discovery process (and the Court's docket) in the hands of the litigants, thus rendering the Court powerless to rein in out-of-control discovery so long as both sides violated the Rules.

the Court has expressly chosen to take the more lenient route of simply ordering *and reordering* that the discovery be produced.  The Court's conscious decision to be lenient in the face of blatant discovery abuses should not, and does not, constrain the Court's ultimate resort to well-deserved sanctions.

Having carefully considered the factors enumerated by the Sixth Circuit, the Court has determined that Able's behavior has been defiant enough to require sanctions beyond attorneys' fees. For reasons explained more fully below, because the Court finds that Able and Anchor have used the relationship between those entities as a vehicle (*i.e.*, excuse) to delay and manipulate discovery, the Court finds that a sanction prohibiting Able and Anchor from contesting Plaintiffs' claim that they are alter egos of one another is particularly appropriate.[10]

Despite readily finding this additional sanction appropriate, however, the Court declines  at this point to grant the additional sanction of prohibiting Defendant from contesting Plaintiffs' claim that the relevant collective bargaining agreement requires contributions with respect to all hours listed in Plaintiffs' expert report.  As Able contends, that sanction is tantamount to granting judgment to Plaintiffs without requiring an evidentiary showing on its claims; that is the most severe of sanctions in a civil case.  Rather than impose this ultimate sanction, the Court instead orders counsel for both Able and Anchor to meet with the Plaintiffs' counsel within fourteen (14) days of this order to ensure that Plaintiffs have received all discovery previously sought from either entity.  Failure to do so, and

---

[10] There is little likelihood that Able and Anchor will be prejudiced by this sanction. After evaluating the information before the Court and the behavior of the litigants, it appears likely that Able and Anchor ultimately would be found to be alter egos in any event.  Indeed, it is noteworthy that, while Anchor failed to oppose Plaintiffs' Motion for Sanctions, Able has made arguments on Anchor's behalf.  This is particularly significant because, throughout discovery, Able terminated depositions and impeded scheduling, claiming it could *not* speak for Anchor. Thus, Able and Anchor speak for one another when it suits their needs, and only refrain from doing so when it serves to inconvenience or frustrate the Plaintiffs' discovery efforts.

to work in good faith to satisfy *all* of their discovery obligations within the next forty-five (45) days will then result in more severe sanctions, including the possible entry of judgment against them.

      **C.**      **Sanctions Against Anchor Are Also Appropriate.**

Plaintiffs' Motion for Sanctions also asserts that Anchor's conduct during discovery has been unreasonable and warrants sanctions.  Anchor has not even bothered to respond to the Motion for Sanctions, which, by itself, exhibits a certain level of disrespect for the Court and the judicial process.[11] Plaintiffs's unopposed motion seeking sanctions against Anchor states that: (1) Anchor has failed to produce the documents required by the Court's Orders; (2) Anchor and Able have coordinated to make the scheduling of depositions nearly impossible by essentially requiring separate depositions of the same individuals depending on the subject matter of the questioning; and (3) Anchor's counsel has refused to respond regarding whether it represents certain witnesses or will accept service.  Considering these circumstances, the history of this litigation, and Anchor's silence on the issues, the Court finds that Anchor is also subject to sanctions.

The presumption that Able and Anchor are alter egos is, thus, appropriate as a sanction against Anchor, as well as Able.[12]  Because it is likely, moreover, that the monetary sanctions imposed upon Able will impact Anchor and its owners as well, precisely because of their interrelated status, the Court declines to award additional monetary sanctions against Anchor.  The Court, reiterates, however, that

---

[11]  While Anchor is not a party to this case, it was legitimately required to respond to third party discovery requests this Court found specifically relevant to Plaintiffs' claims.  Having been properly served with the request for sanctions, Anchor had an obligation to respond if it debated any positions or assertions of the Plaintiffs.

[12] This sanction applies to this case only and to the contributions at issue here.  The Court makes no finding as it relates to the relationship between these parties for contributions allegedly owed for subsequent time periods.

14

Anchor is bound by this Court's earlier Order to produce the requested discovery and by its order herein to resolve any outstanding discovery disputes within forty-five (45) days. As discussed above, any attempt to constrain discovery by asserting unreasonable or unsupportable interpretations of the Court's Orders will result in additional sanctions.

**III.    CONCLUSION.**

For the foregoing reasons, Plaintiffs' *Motion for Sanctions (With Request for Attorney Fees and Costs)* (Doc. 50) is **<u>DENIED</u>** to the extent that it seeks to have established for the purposes of the action that the collective bargaining agreement at issue applies to the hours listed in Plaintiffs' expert report. The Court agrees with Able that such evidentiary sanctions are tantamount to a default judgment and, for the moment, premature. Plaintiffs' motion for sanctions is **<u>GRANTED</u>** to the extent that it seeks to have established for the purposes of this action that Able Contracting Group, Inc. and Anchor Construction Fencing, LLC are alter egos, and to the extent that it seeks attorneys' fees from Able and Mr. Sabo.

**<u>Within ten (10) days of the date of this Order</u>**, counsel for Plaintiffs shall provide to the Court an affidavit (with supporting records) to be submitted *in camera* reflecting the <u>fees and expenses</u> incurred during the preparation of Plaintiffs' *Motion for Sanctions* (Doc. 50), *Reply in Support of Motion for Sanctions* (Doc. 54), and the time expended during mid-March 2006 addressing the discovery issues previously resolved by the Court. Upon receipt and consideration of these materials, the Court will determine the appropriate amount of the sanction to be imposed on Able and Mr. Sabo. The Court then will issue a separate Order reflecting its determinations. If Plaintiffs seek leave to amend the Complaint to assert claims against Anchor as an alter ego of Able, they must do so within fourteen (14) days of the date of this Order. Defendants will have ten (10) days thereafter to respond

any such request.

The parties are **ORDERED** to meet within fourteen (14) days to review the prior responses to Plaintiffs' previous discovery requests and to satisfy all of their discovery obligations within forty-five (45) days of the date of this Order**.**  If Defendant Able Construction Group and Anchor Construction Fencing, LLC are unable to correct any deficiencies within the that period, they must **SHOW CAUSE** why they should not be found in **CONTEMPT** of this Court's Orders.  Counsel for Able and Anchor, moreover, are advised that any future failure to comply with the Court's discovery Orders will warrant additional, more severe sanctions.  As noted above, the Court has imposed the lesser sanction of attorneys' fees and an evidentiary presumption based on a belief that the production of the requested documents was *delayed*.  If, after the forty-five (45) day period expires, it becomes clear that Able and Anchor have refused to produce the requested documents or have destroyed or otherwise compromised evidence, the Court will consider a contempt penalty and/or entertain a request for more severe sanctions which may include a further evidentiary presumption or default judgment.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: January 19, 2007**

16